745 N.W.2d 325 (2008)
275 Neb. 182
KATHERINE R. NAPLETON REVOCABLE SELF-DECLARATION OF TRUST, Appellant
v.
VATTEROTT EDUCATIONAL CENTERS, INC., a Missouri Corporation, Appellee.
No. S-06-1032.
Supreme Court of Nebraska.
February 29, 2008.
*327 Andrew J. Hilger, of Greul & Hilger, L.L.C., Omaha, for appellant.
James D. Garriott, of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
McCORMACK, J.

NATURE OF CASE
The Katherine R. Napleton Revocable Self-Declaration of Trust (Napleton), the lessor of property located in Omaha, Nebraska, brought suit against Vatterott Educational Centers, Inc. (Vatterott), the assignee of the lease, for breach of contract. Napleton alleged that Vatterott was liable for the failure of the assignor-lessee of the property, the Omaha College of Health Careers, Inc. (Omaha College), to pay property taxes in years preceding the assignment of the lease to Vatterott. We affirm the district court's granting of summary judgment in favor of Vatterott.

BACKGROUND
Napleton is the owner Of property located at 225 North 80th Street in Omaha. In 1999, Napleton and Omaha College entered into a lease agreement wherein Omaha College leased the property from Napleton. On October 5, 2001, Napleton, Omaha College, and Vatterott entered into an agreement entitled "Assignment & Amendment of Lease Agreement" (Assignment Agreement).
Under the terms of the Assignment Agreement, Napleton agreed to terminate Omaha College's rights and obligations under the 1999 lease and to assign Omaha College's rights and obligations to Vatterott. The Assignment Agreement further provided that Vatterott would pay rent during the term of the lease as well as "additional rent." The additional rent clause provides: "Lessee agrees to pay to Lessor as additional rent those amounts and at such time as payment of such additional rent would be required to be paid by Tenant under [the] terms of Section 4, Additional Rent, of the 1999 Lease." Section 4 of the 1999 lease provided:
Tenant agrees to pay to Landlord as additional rent those amounts and at such time as payment of such additional rent would be required to be paid by General Motors Corporation under the terms of the Original 1955 Lease if said Original 1955 Lease were still in full force and effect.
The 1955 lease referenced in the 1999 lease was between New England Mutual Life Insurance Company and General Motors Corporation. Article 2, § 2.02, of the 1955 lease provided:
As additional rent, Lessee shall pay, from the operative date of this lease, all:
(a) Taxes, assessments and other governmental charges except as hereinafter stated in paragraph (e) of this section;
. . . .
(e) Other expenses and charges;
which during any term of this lease shall be levied, assessed or imposed by any governmental authority upon or with respect to, or incurred in connection with the ownership, possession, occupation, operation, alteration, maintenance, repair and use of the premises . . . .
Property taxes on the property for the year 2000 were due in the amount of $29,168.38. The property taxes on the property for the year 2001 were due in the amount of $31,261.62. However, neither the 2000 nor the 2001 property taxes were paid by Omaha College or Napleton. Napleton claims that it first became aware *328 that Omaha College was delinquent on property taxes for the tax years 2000 and 2001 in February 2003. On February 19, 2003, Napleton requested payment from Vatterott for the property tax delinquency in the amount of $71,513.15. That amount included the amount of taxes delinquent for the 2000 and 2001 property tax years, as well as $11,083.15 in interest. Vatterott forwarded a check in the amount of $7,537.20 to Napleton, which Vatterott determined was its prorated share of the property taxes for 2001.
Napleton brought the present action against Vatterott, alleging breach of contract. Vatterott filed a motion for summary judgment, which was granted by the district court. In its order, the district court stated that although Vatterott agreed to pay additional rent under the Assignment Agreement, the Assignment Agreement did not obligate Vatterott to pay accrued but unpaid obligations; of Omaha College. The district court then found as a matter of law that
an assignee is not liable for covenants or agreements of the assignor broken before the assignee acquired the leasehold unless agreed to by the parties at the time the lease was entered into The prior obligations of Omaha College . . . became causes of action in favor of [Napleton] against Omaha College . . . at the time those covenants were broken.
Napleton now appeals.

ASSIGNMENTS OF ERROR
Napleton asserts that the district court erred in (1) its interpretation of the Assignment Agreement and (2) finding as a matter of law that an assignee is not liable for lease covenants or agreements broken by the assignor prior to the assignment.

STANDARD OF REVIEW
In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[1]

ANALYSIS

PRIVITY OF ESTATE
Napleton argues that the property tax delinquency was an obligation under the 1999 lease. Napleton claims that obligations under the 1999 lease were amended prospectively from the date of the Assignment Agreement, but were not terminated. Napleton further argues that under the Assignment Agreement, Omaha College's obligations under the 1999 lease were terminated, but that to the extent Omaha College failed to perform its obligations under the 1999 lease, those obligations were assumed by Vatterott. The broad question presented by these arguments is whether an assignee of a lease for real property must perform obligations not fulfilled by the assignor of the lease prior to the lease assignment.
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it *329 is entitled to judgment as a matter of law.[3]
It has generally been stated that an assignee or transferee of an interest in leased property is liable for a breach of a promise that runs with the land and which is broken while the assignee or transferee holds the leasehold estate, but is not liable for a promise that runs with the land if the promise is broken before the assignment or transfer.[4]
In Regency Adv. Ltd. v. Bingo Idea-Watauga,[5] the assignee of a landlord brought an action against a commercial tenant, claiming in part that the tenant breached the lease by failing to pay rent. The tenant counterclaimed, alleging that the assignee breached the lease by failing to build leased space for the tenant. The Texas Supreme Court held that the assignee was not liable for breach of the lease because the obligation to build leased space accrued before the lease was assigned to the assignee. Quoting the Restatement of Property (Second), the court stated, "`A transferee is liable on a promise that runs with the transferred interest only to the extent of a breach of the promise that occurs while the transferee is in privity of estate with the person entitled to enforce the promise.'"[6]
In Lone Star Gas v. Mexia Oil & Gas,[7] the buyer under a gas purchase contract sued in part the assignee to whom the seller had assigned its lease interests in a gas well. The buyer alleged that the assignee was obligated to reimburse the buyer for taxes paid on gas well production. The Texas Court of Appeals held that the assignment which stated that it was "subject to" the gas purchase contract between the buyer and the seller/assignor did not obligate the assignee to pay the prior debt of the assignor. The court explained that privity of estate is the foundation of the assignee's liability on covenants that run with the land. Because there was not privity of estate between the buyer and the assignee when the breaches took place, the assignee was not liable for breaches that took place before the assignment.[8]
Finally, in First Nat. Bank v. Hazelwood Co.,[9] the Oregon Supreme Court stated the following proposition:
The rule is . . . "The assignee is only liable for covenants running with the land which are broken while he is the legal assignee"
. . .
"An assignee is only liable for his own breaches of express or implied covenants in the lease which run with the land, so long as he retains possession by himself or his tenants."
The court further noted the following rule: "`An assignee of the leasehold is in privity of estate with the lessor and is liable to *330 him personally for the breach of the lessee!s covenants which are annexed to and run with the leasehold and which are broken while he holds the leasehold estate.'"[10]
In the present case, Napleton and Vatterott were not in privity of estate when the 2000 tax liability accrued. Nor were they in privity of estate between January and October 4 of the 2001 tax year, or for 9 months of the period in which the 2001 tax liability accrued. The lack of privity of estate between Napleton and Vatterott means that Vatterott is not liable for any breaches of the lease terms prior to the October 5, 2001, assignment unless the parties contracted otherwise.

ASSIGNMENT AGREEMENT
The Assignment Agreement provides in part: "[Napleton] and [Omaha College] agree to terminate [Omaha. College's] rights and obligations under the 1999 Lease and to assign [Omaha College's] rights and obligations therein to [Vatterott]." The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.[11] In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.[12] When the terms of a contract are clear, they are to be accorded their plain and ordinary meaning.[13]
The language of the Assignment Agreement is clear and unambiguous. Omaha College's rights and obligations under the 1999 lease were terminated as of October 5, 2001, the date the Assignment Agreement was executed. The Assignment Agreement does not provide that Vatterott is liable for any obligations arising prior to the date of assignment. Absent a provision obligating Vatterott for liabilities arising prior to the time Vatterott obtained its leasehold interest in the property, the lack of privity of estate in this case compels our conclusion that Vatterott is not liable for Omaha College's failure to fulfill Omaha College's obligations under the 1999 lease.

CONCLUSION
For the reasons discussed above, we affirm.
AFFIRMED.
NOTES
[1] Sayah v. Metropolitan Prop. & Cas. Ins. Co., 273 Neb. 744, 733 N.W.2d 192 (2007).
[2] Erickson v. U-Haul Internat., 274 Neb. 236, 738 N.W.2d 453 (2007).
[3] Hauptman, O'Brien v. Turco, 273 Neb. 924, 735 N.W.2d 368 (2007).
[4] See, e.g., Restatement (Second) of Property § 16.1 (1977); 49 Am.Jur.2d Landlord and Tenant § 960 (2006).
[5] Regency Adv. Ltd. Partnership v. Bingo Idea-Watauga, 936 S.W.2d 275 (Tex.1996).
[6] Id. at 277 (quoting Restatement, supra note 4, comment h.).
[7] Lone Star Gas v. Mexia Oil & Gas, 833 S.W.2d 199 (Tex.App.1992).
[8] Id. (citing Washington N. Gas Co. v. Johnson, 123 Pa. 576, 16 A. 799 (1889) (assignee liable for covenants maturing while held by him, but not liable for those previously broken)).
[9] First Nat. Bank v. Hazelwood Co., 85 Or. 403, 407-08, 166 P. 955, 956 (1917) (quoting 1 David McAdam, The Rights, Duties, Remedies and Incidents Belonging to and Growing Out of the Relation of Landlord and Tenant 863, 875 (Thomas F. Keogh ed., 4th ed. 1910)).
[10] Id. at 409, 166 P. at 956 (quoting 16 R.C.L. Landlord and Tenant § 349 (1917)).
[11] Hogelin v. City of Columbus, 274 Neb. 453, 741 N.W.2d 617 (2007).
[12] Tighe v. Combined Ins. Co. of America, 261 Neb. 993, 628 N.W.2d 670 (2001).
[13] Sayah v. Metropolitan Prop. & Cas. Ins. Co., supra note 1.